**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Calvert Les Woody,<br><br>    Defendant. | No. CR-13-08093-PCT-NVW<br><br>**ORDER** |

Before the court is Defendant's Motion-in-Limine to Preclude/Limit Testimony of Government's Expert Witnesses (Doc. 108). Defendant raises a number of objections to two proposed expert witnesses proffered by the Government: Susann Clinton, a forensic nurse practitioner who examined one of the alleged victims, and Carli Moncher, a "forensic interviewer" at the Flagstaff Medical Center's Safe Child Center who examined the other.

According to the Government's notices of disclosure, Clinton would testify to "statements of Jane Doe 1, Jane Doe 1's non-verbal reactions and demeanor, and specific findings set forth in her report"; she would also opine that a "'normal' anogenital examination does not confirm or negate the possibility of sexual abuse" and that the "medical findings and observations in this case are consistent with the Jane Doe 1's report of sexual abuse." (Doc. 49.) In addition to relating "how the victims were acting during the interviews," Moncher would offer expert opinions "regarding two relevant areas of expertise relevant to child sexual abuse cases: (1) the process of victimization,

and (2) the process of disclosure." (Doc. 50 at 1-2.) Moncher's testimony on victimization would detail the five "components" of the process by which, allegedly, the typical child sexual abuser harms his victims: "Targeting, engagement, grooming, assault and concealment." (*Id.* at 3.) Moncher would also describe the misleadingly halting ways in which child victims disclose the details of sexual abuse. For example, rather than "provid[ing] a chronological account of what happened," they "tend to lump details together from various events"; they "have delayed disclosures, piecemeal disclosures and/or even recanted disclosures"; and they may tailor their disclosures based on a "fear of what might happen to themselves, family members or the offender as a result of the disclosure." (*Id.*)

The generality with which the Government describes Clinton's anticipated testimony makes it difficult to determine whether Defendant's objections have merit. Testimony about Jane Doe 1's statements and non-verbal cues, and how those statements are confirmed by the medical evidence, could cover any number of topics; the Government offers no indication of which particular avenues of testimony it intends to pursue. Likewise, Clinton's report contains numerous "findings," none of which the Government's Notice (Doc. 49) singles out as the subject of testimony at trial. The court's assessment of Clinton's testimony can therefore only be tentative.

Defendant moves to exclude any statements made by Jane Doe 1 on the grounds that they are inadmissible hearsay. In its Response (Doc. 114), the Government contends Jane Doe 1's statements to Clinton fall under the hearsay exception for statements made for medical diagnosis or treatment. That rule allows admission of a "statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). The fact that Clinton is a forensic nurse practitioner does not by itself bring any statements made to her within Rule 803(4). Whether Jane Doe 1's statements were "reasonably pertinent to" medical diagnosis or treatment will turn on facts not currently before the court, such as the structure of

1 Clinton's interview, how she introduced herself to Jane Doe 1, the kinds of questions
2 Clinton asked, and Jane Doe 1's own purposes in going to Clinton and speaking to her.
3 Without this information, any ruling on the admissibility of Jane Doe 1's statements
4 would be premature.  It might also be unnecessary.  If Jane Doe 1 testifies at trial and
5 Defendant attacks her credibility, statements made to Clinton may be admissible as prior
6 consistent statements under Federal Rule of Evidence 801(d)(1)(B).

7 While Moncher's proposed testimony is more specific than Clinton's, a ruling on
8 its admissibility would similarly be premature at this stage.  Discussion of the
9 "victimization process" appears to be tantamount to "drug courier profile evidence," i.e.,
10 testimony that provides "a somewhat informal compilation of characteristics believed to
11 be typical of persons unlawfully carrying narcotics."  *United States v. Lui*, 941 F.2d 844,
12 847 (9th Cir. 1991).  The Ninth Circuit has "denounced" the use of this kind of testimony
13 "as substantive evidence of a defendant's innocence or guilt."  *Id.*  "Drug courier
14 profiles," the Ninth Circuit has explained, "are inherently prejudicial because of the
15 potential they have for including innocent citizens as profiled drug couriers."  *Id.*  In
16 "certain limited circumstances," such testimony may be proper.  *Id.*  For instance, the
17 Ninth Circuit has blessed district courts' admission of profile evidence to impeach a
18 defendant after he "opened the door to this line of questioning by emphasizing his
19 apparent poverty," to provide "background material [about] how the arrest occurred," and
20 to "show a modus operandi" in "certain cases, such as those involving complex drug-
21 smuggling conspiracies."  *Id.* at 847-48.  Absent such circumstances, there is "little, if
22 any, probative value to offset the potential prejudice caused by" profile evidence.  *Id.* at
23 848.  It is hard to see how the Government could fit Moncher's testimony on the
24 "victimization process" into any of these exceptions, or otherwise move it into evidence.
25 But determination of that question must await trial, where the testimony's relationship to
26 other evidence and the Government's theory of the case will be clearer.

27 The admissibility of testimony on "the process of disclosure" is even more
28 dubious.  It is "the sole province of the jury to determine questions of credibility and to

weigh the evidence adduced at trial." *Moses v. Payne*, 543 F.3d 1090, 1105 (9th Cir. 2008). Expert testimony "should not 'invade[] the province of the jury,'" and "expert testimony to bolster or impugn the credibility of a witness is properly excluded." *United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993) (alteration in original). Although the Government repeatedly denies that Moncher's explanation of the disclosure process is meant to support the victims' credibility, that is plainly its principal purpose. Fearing the victims will appear confused, inconsistent, or dishonest on the witness stand, the Government hopes to combat that perception through "expert" testimony purporting to show that signs of disorientation are in fact compatible with telling the truth. Federal Rules of Evidence 403 and 702 do not permit vouching of this kind. The cases cited by the Government are not to the contrary; they establish only that admission of such testimony is not an abuse of discretion. *E.g.*, *United States v. Bighead*, 128 F.3d 1329, 1330 (9th Cir. 1997). Nevertheless, there may be some basis—not discernible from the record currently before the court—on which the Government could justify admission of Moncher's testimony. The court will therefore defer until trial a final ruling on Defendant's motion to bar her from testifying.

Finally, Defendant objects that the Government has not established the relevance and reliability of the experts' proposed testimony. As an initial matter, to the extent the Government argues Clinton's and Moncher's testimony is not subject to the analysis of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), that contention is without merit. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (holding that the "gatekeeping" role imposed by *Daubert* and Rule 702 "applies to all expert testimony," not just "'scientific' testimony"). But because much of the Government's proposed testimony may be inadmissible in any event, there is no need at this stage to decide whether Clinton and Moncher can be qualified by their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. There is also no need to decide whether Clinton's and Moncher's testimony "is based on sufficient facts or data" and "is the product of reliable principles and methods." *Id.* The court notes, however, that

Moncher's testimony in particular may be insufficiently reliable to warrant admission. There is no indication from the Government's briefing that her knowledge of the "process of disclosure" is based on the behavior of known child sexual abuse victims, rather than merely on the behavior of children who have alleged sexual abuse. Nor is there a valid basis for distinguishing those behaviors from those of children who have not been sexually abused.

Read together, the Government's undetailed notices of disclosure and Defendant's numerous objections essentially request a roadmap for trying the Government's case. The court is not inclined to provide one, especially when doing so would require speculation about the hypothetical uses to which the Government might put its desired evidence. Some parts of the proposed testimony are almost surely inadmissible; others may well be proper, depending on the foundation laid at trial and the testimony's relation to other evidence. Those questions are not fit for resolution prior to trial.

IT IS THEREFORE ORDERED that Defendant's Motion-in-Limine to Preclude/Limit Testimony of Government's Expert Witnesses (Doc. 108) is denied without prejudice to making specific objections at trial.

Dated this 22nd day of April, 2015.

_____
Neil V. Wake
United States District Judge